## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCOS A. OLGUIN,** | : | |
| | : | **Civil No. 1:12-CV-3** |
| **Plaintiff** | : | |
| | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **BURGERHOFF, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case.

This is a civil rights action brought by a *pro se* plaintiff, Marcos Olguin, on January 3, 2012.  In his complaint, Olguin alleged that in December of 2009 he was a federal prisoner housed at the United States Penitentiary, Canaan. (Doc. 1) According to Olguin, in late December 2009, he began experiencing severe abdominal pain, jaundice, and blood in his urine.  (Id.)  Olguin alleges that prison officials took no meaningful steps to address his medical complaints for a week, until January 7, 2010, when Olguin was transported to Wayne Memorial Hospital for treatment.  At the Wayne Memorial Hospital, Olguin recites that he received prompt care, including the surgical removal of his gall bladder on January 9, 2010.  (Id.)  Indeed, in copies of grievances forms which Olguin attached to his complaint, the plaintiff stated with respect to the hospital that:  "I'm not complaining about the diagnosis at the local hospital."  (Id.)

Despite initially disavowing any complaints regarding the treatment he received at the local hospital, in his *pro se* complaint Olguin now names a treating physician at Wayne Memorial Hospital, Dr. Reynolds, and two other hospital staff as defendants, and asserts that these health care providers, along with prison staff, violated Olguin's rights under the Eighth Amendment to the United States Constitution by displaying deliberate indifference to his serious medical needs. (Id.)

At the time that he filed this *pro se* complaint, Olguin received a copy of this Court's Standing Practice Order, an order which informed Olguin of his responsibility to reply to defense motions, and warned Olguin in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 3, p.2 )

This Standing Practice Order also went on to explicitly inform Olguin that:

> A *pro se* plaintiff has the affirmative obligation to keep the court informed of his or her current address. If the plaintiff changes his or her address while this lawsuit is being litigated, the plaintiff shall immediately inform the court of the change, in writing. If the court is unable to communicate with the plaintiff because the plaintiff has failed

to notify the court of his or her address, the plaintiff will be deemed to have abandoned the lawsuit.

(Id., p.4.)

On March 20, 2012, the defendant, Dr. Reynolds, filed a motion to dismiss Olguin's complaint. (Docs. 17-19)  We then set a briefing schedule for this motion, advising Olguin that:  "The party opposing the motion shall file a response to the motion in accordance with Local Rule 7.6 on or before **April 4, 2012**." (Doc. 20)  On April 4, 2012, the date set for Olguin's response, the Court received a notice that its scheduling order had been returned as undeliverable, and that a search of federal and state prison records revealed no prisoner named Marcos Olguin housed in the prison system. (Doc. 21)  Thus, the deadline for Olguin's response has now passed, and it appears that Olguin has violated this Court's Standing Practice Order by both failing to respond to the motion, and by failing to provide the Court with any means of communicating with the plaintiff.  In short, it is now apparent that Olguin is no longer accepting communications at the last address which he had provided to the Court.  As a *pro se* litigant Olguin's failure to maintain an address where he could be reached itself violated both the Court's Standing Practice Order and the rules of this Court; specifically, Local Rule 83.18, which provides that:

> Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file

with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served upon such party.

Since the 14-day response deadline for this motion prescribed by Local Rule 7.5 has now passed without any action on Olguin's part to respond to this motion, and we no longer have any means to communicate with Olguin, this motion is now ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss should be granted.

## II.   Discussion

### A.   Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted.

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion, since Olguin has both failed to timely oppose the motion, or otherwise litigate this case, and has failed to maintain an address where the Court can communicate with the plaintiff.  These procedural defaults completely frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after

service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Olguin has not complied with the Local Rules, or this Court's order, by filing a timely response to this motion. Furthermore, Olguin is in violation of Local Rule 83.18 by failing to maintain an address where he can be contacted by the Court, making communications regarding this litigation virtually impossible. On these facts, Olguin's procedural defaults compel the Court to consider:

[A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. See Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191,

197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." <u>Id.</u>  Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed comply with this Court's orders, has violated Local Rule 83.18 by abandoning this litigation without providing the Court with a means to contact him, and has neglected to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss filed by the defendants.  These cumulative failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion to dismiss.

## B.     Dismissal of this Case Is Also Warranted Under Rule 41.

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b)

of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for

failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with

these rules or a court order, a defendant may move to dismiss the action or any claim

against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure

to prosecute rest in the sound discretion of the Court, and will not be disturbed absent

an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.

2002)(citations omitted).  That discretion, however, while broad is governed by certain

factors, commonly referred to as Poulis factors.  As the United States Court of Appeals

for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in
> dismissing a case for failure to prosecute], we evaluate its balancing of the
> following factors: (1) the extent of the party's personal responsibility; (2)
> the prejudice to the adversary caused by the failure to meet scheduling
> orders and respond to discovery; (3) a history of dilatoriness; (4) whether
> the conduct of the party or the attorney was willful or in bad faith; (5) the
> effectiveness of sanctions other than dismissal, which entails an analysis
> of alternative sanctions; and (6) the meritoriousness of the claim or
> defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to

determine whether a District Court has abused its discretion in dismissing for failure

to prosecute." Lopez v. Cousins, No. 10-1877,  2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992))." Briscoe v. Klaus,  538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263.  However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, has

neglected to litigate this case, and has provided no means for the Court to communicate with this party.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; <u>see also Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. <u>See, e.g., Poulis</u>, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories,the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); <u>Ware</u>, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages

and did not provide it until one week prior to trial).

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.  In such instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe  v. Klaus, 538 F.3d at 260-61 (some citations omitted).  Here, since filing his complaint in January, the plaintiff has failed to timely file pleadings, provide the Court with any means of communicating with this party and

has not complied with orders of the Court.    Thus, Olguin's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff.  In this setting we must assess whether Olguin's conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994).  Here, we find that the plaintiff's actions were willful, and reflect a pattern of willfulness.    At this juncture, when the plaintiff has failed to comply with instructions of the Court directing him to take specific actions in this case, has provided us with no means to communicate with him, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the

rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191.  This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since Olguin is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to cooperate with this litigation, which  would address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to dismiss.  In any event, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at 263.

Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot defeat this motion.

In any event, as discussed below, Olguin's claims against defendant Reynolds clearly fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in many of these claims are discussed separately below.

### C.    Olguin's Claims Against Defendant Reynolds Fail On Their Merits

Defendant Reynolds has filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v.</u>

<u>Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>  In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts

upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v.</u>

<u>Iqbal</u>, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when

considering a motion to dismiss, a court should "begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth."

<u>Id.</u> at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at

1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court

has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.   Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.   Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these standards, Olguin's claim against Dr. Reynolds clearly fails. In this case, the gravamen of Olguin's complaint is that the defendants violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. Olguin faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Olguin must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately

indifferent to an inmate's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in a prison setting, Olguin is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.

Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).  Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed

to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir.2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with

selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"). Indeed, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of medication to prescribe for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law. See e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Judged against these legal benchmarks, Olguin's complaints regarding Dr. Reynolds clearly fail to state a claim of constitutional proportions under the Eighth Amendment, a claim of deliberate indifference to serious medical needs. Quite the contrary, at the Wayne Memorial Hospital, Olguin recites in his complaint that he

-21-

received prompt care, including the surgical removal of his gall bladder on January 9,

2010.  (Doc. 1)  Indeed, in copies of grievances forms which Olguin attaches to his

complaint, the plaintiff stated with respect to the hospital that:  "I'm not complaining

about the diagnosis at the local hospital."  (Id.)  While Olguin may now, with the

benefit of hindsight, be displeased with this surgical outcome he cannot convert this

disagreement with his physician into a claim of constitutional dimension.  Rather, a

mere disagreement between an inmate and doctors over alternate treatment plans fails

as constitutional claims under § 1983 since "the exercise by a doctor of his professional

judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836

(E.D. Pa. 1997)(citations omitted).

Nor can Olguin maintain a negligence action against Dr. Reynolds, as a pendant

state tort claim.  In order to present a *prima facie* case of medical malpractice under

Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert

opinions that the alleged act or omission of the defendant physician or hospital

personnel fell below the appropriate standard of care in the community, and that the

negligent conduct caused the injuries for which recovery is sought." Simpson v. Bureau

of Prisons, No. 02-2213, 2005 WL 2387631, at *5 (M.D.Pa. Sept. 28, 2005)  This

requirement is imposed upon malpractice plaintiffs like Olguin by Pennsylvania Rule

of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along

with this malpractice claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Thus, to the extent that Olguin wishes to bring a medical malpractice action, his failure to comply with Rule 1042.3 is a bar to this claim.  In this regard, the controlling legal standards can be simply stated:

Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard." ' Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3).  Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedform Mem'l Hosp.., 328 F.Supp.2d 549 (W.D.Pa.2004).  Courts may dismiss cases when a plaintiff fails to file a required certificate of merit. See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007);

McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472,

475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a

possible ground for dismissal by the district court, when properly

presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints,

and to pro se medical malpractice actions brought under state law.  See Hodge v. Dept.

of Justice, 372 Fed. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal

of medical negligence claim for failure to file COM); Iwanejko v. Cohen & Grigsby,

P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839, 2009 WL

1770146 (M.D. Pa. June 22, 2009).  Therefore, Olguin's status as a pro se litigant

cannot excuse him from compliance with the substantive state law when bringing this

state law claim of malpractice. Id.  Moreover, Pennsylvania caselaw construing this

certificate of merit requirement has expressly extended the requirement to a wide array

of  malpractice claims like those brought here.  See, e.g., Estate of Aranda, 987 A.2d

727 (Pa Super. 2009); Pollock v. Feinstein, 917 A.2d 875 (Pa. Super. 2007);

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778 (M.D. Pa. Aug. 13,2009)

(construing Pennsylvania law). . Cf. Liggon-Redding v. Estate of Sugarman, 659 F.3d

258, 260 (3d Cir. 2011) (in context of a diversity action, holding that the certificate of

merit requirement provided by Rule 1042.3 constitutes substantive state law that federal courts must apply under Erie v. Tompkins, 304 U.S. 64 (1938)).

Given the substantive nature of this requirement under Pennsylvania law, Olguin's undisputed failure to comply with this requirement,  and its clear application to inmate medical malpractice and negligence claims, any medical malpractice claim advanced by Olguin against Dr. Reynolds should also be dismissed.  Thus, an analysis this final Poulis factor– the meritoriousness of the plaintiff's claims–reveals that Olguin's assertions against defendant Reynolds in this complaint fail to allege a colorable  claim under either the Constitution or the common law of Pennsylvania. Given the legal bankruptcy of these claims, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).   In this case, the current amended complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that he has no

right to relief, and Olguin has declined to respond to court orders, or otherwise litigate these claims.  On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed as to Dr. Reynolds without further leave to amend.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendant Reynolds' Motions to Dismiss (Docs. 17-19), be GRANTED and the Plaintiff's complaint be dismissed as to Dr. Reynolds.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of April 2012.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge